1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WILLIAM BARKER,                              No.  2:13-cv-01793-KJN P

12                    Plaintiff,

13        v.                                      ORDER

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16                    Defendants.

17

18        Plaintiff William Barker is a state prisoner, proceeding with retained counsel, with a

19   complaint filed pursuant to Title II of the Americans with Disabilities Act, Section 504 of the

20   Rehabilitation Act, and state law claims under the California Unruh Civil Rights Act, and

21   California Disabled Persons Act.  Plaintiff paid the filing fee and filed certificates of service on

22   two of the three named defendants, the California Department of Corrections and Rehabilitation

23   (CDCR), and the State of California (State) (hereafter "State Defendants").  (ECF No. 3, 4.)

24   Plaintiff has not filed a proof of service on the third defendant, Mark Green, who is the Materials

25   and Storage Supervisor at plaintiff's place of incarceration, the California Medical Facility

26   (CMF).  This proceeding was referred to this court by Local Rule 302, pursuant to 28 U.S.C. §

27   636(b)(1).

28   ////

                                                 1

1    The State Defendants are jointly represented by the California Attorney General's Office,

2    which requests that the court screen plaintiff's complaint pursuant to 28 U.S.C. § 1915A.  That

3    statute, enacted as part of the Prison Litigation Reform Act (PLRA), requires courts to screen

4    complaints brought by prisoners seeking relief against a governmental entity or officer or

5    employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint

6    or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that

7    fail to state a claim upon which relief may be granted, or that seek monetary relief from a

8    defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

9    Pursuant to the instant complaint, plaintiff alleges that he has "a history of chronic

10   infectious disease and a right femur fracture with open reduction and internal fixation.  [He]

11   suffers from pain in his back, shoulder and neck, and is confined to a wheelchair . . . ."  (ECF No.

12   1 at 2.)  Plaintiff avers that he is a "designated DPW" ("Disabled Person Wheelchair"), under the

13   Armstrong consent decree.  See Armstrong v. Brown, 732 F.3d 955 (9th Cir. 2013), and related

14   references noted therein.  Plaintiff states that, pursuant to this designation, he is prescribed a

15   wheelchair for fulltime use, both within and outside his assigned cell.  Plaintiff further states that

16   CMF is a "designated DPP [Disability Placement Program] facility."

17   Plaintiff further alleges (ECF No. 1 at 4-5) (numbering and original formatting deleted):

18       On May 23, 2012, Barker purchased and received a size 20 regular
         wheelchair for approximately $315 from the CMF.  That same day,
19       Barker noticed that the wheelchair was functioning improperly and
         requested a replacement wheelchair.  Because CMF staff ignored
20       his repeated requests, Barker filed a formal request for a
         replacement wheelchair on June 18, 2012.  In his formal request,
21       Barker indicated, among other things, that his weight exceeded the
         functional weight limit for the wheelchair; the wheelchair wheels
22       did not roll properly, portions of the chair were torn despite his use
         of the chair for less than one month; and the rear right wheel rolled
23       as though the axle was bent.

24       Four months after requesting a replacement chair (October 12,
         2012), Barker was issued a replacement wheelchair.  This
25       "replacement" wheelchair was a used, heavy duty, size 22
         wheelchair, despite the fact that he had purchased a new, size 20
26       wheelchair.  Barker returned to the repair office and immediately
         told the staff that he had been issued the wrong wheelchair and that
27       his replacement wheelchair was not functioning properly.

28   ////

2

Two weeks later (October 24, 2012), Barker attempted to visit the eye clinic ("the B-1 clinic") where he had an appointment, but was unable to maneuver his size 22 wheelchair through the door. That same day, Barker told Green that he needed a replacement wheelchair.

The next day (October 25, 2012), Barker filed a Reasonable Modification or Accommodation Request, requesting a size 20 wheelchair. Four days later (October 29, 2012) the Associate Warden of Program Services (M. Kaplan) informed Barker that his modification request for a 20-inch-wide wheelchair had been granted, and that Green would provide him with one on November 1, 2012.

One week later (November 5, 2012), Green had Barker sign a document indicating that he had issued him a wheelchair that was different than the one Barker had originally been issued on May 23, 2012. It wasn't. The wheelchair issued in November was the same chair that Green issued to Barker in May. The wheelchair had not been fixed in the interim and continued to malfunction.

Barker immediately met with Lieutenant P. Mirich and Captain Forncrook with Green present. He told Mirich and Forncrook that Green had given him the same chair but Green interrupted, and falsely declared to the three of them that the wheelchair was a different wheelchair than the one Barker had been issued in May.

Two weeks later (November 19, 2012), the wheelchair failed catastrophically. Barker sustained injuries to his hand, including (but not limited to) a bony avulsion of the ulnar collateral ligament of the left thumb and comminuted fracture of the proximal phalanx of the left thumb with volar displacement of the proximal phalanx when Barker's thumb became caught in the spokes. In layman's terms, Barker seriously injured his (sic) and broke his thumb.

Barker required surgery under general anesthesia at San Joaquin General Hospital to repair the damage to his hand caused by the defective wheelchair.

Pursuant to these allegations, plaintiff contends that defendants discriminated against him on the basis of his disability. Plaintiff seeks general, special and statutory damages, attorney fees and costs, and such other relief as the court may determine. Plaintiff does not seek injunctive relief, indicating that he is now using a wheelchair that he finds appropriate for his needs.

The Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12131–12134, and Rehabilitation Act (RA), 29 U.S.C.A. § 794, preclude discrimination on the basis of disability, and apply to inmates and parolees in the state correctional system. Armstrong v. Wilson, 124 F.3d 1019, 1022-24 (9th Cir. 1997); Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206

1    (1998) (claim against "public entity" under Title II of ADA may be directed to state correctional

2    systems).

3         The standards for determining whether an act of discrimination violated the RA are the

4    same as those applied under the ADA.  Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d

5    879, 884 (9th Cir. 2004).  In order to state a claim under Title II of the ADA, plaintiff must allege

6    the following:

7              (1) he is an individual with a disability; (2) he is otherwise qualified
              to participate in or receive the benefit of some public entity's
8              services, programs, or activities; (3) he was either excluded from
              participation in or denied the benefits of the public entity's services,
9              programs, or activities, or was otherwise discriminated against by
              the public entity; and (4) such exclusion, denial of benefits, or
10             discrimination was by reason of his disability.

11   O'Guinn v. Lovelock Corr. Center, 502 F.3d 1056, 1060 (9th Cir. 2007) (citations, punctuation

12   and internal quotation marks omitted).[1]  To recover money damages under Title II, a plaintiff

13   must prove that he was discriminated against intentionally.  Duvall v. County of Kitsap, 260 F.3d

14   1124, 1138–39 (9th Cir. 2001).

15        The court finds that plaintiff's legal claims, read in tandem with his factual allegations,

16   fail to describe how he was excluded from CMF's services, programs or activities by reason of

17   his disability.  The only exclusion plaintiff alleges was his inability, on October 24, 2012, to

18   maneuver his size 22 wheelchair through the door to the eye clinic.  However, plaintiff does not

19   state whether he was thereby prevented from obtaining services from the eye clinic, e.g., an eye

20   examination, treatment or glasses.  Plaintiff may have been able to enter the eye clinic by other

21   means (e.g., by using a cane and/or with assistance from another person) on October 24, 2012, or

22   thereafter; plaintiff does not state that has been generally precluded from obtaining eye clinic

23   services.  These matters are not easily inferred.  Plaintiff's factual allegations span a period of

24   several months, from May 2012 (when plaintiff first requested a replacement size 20 wheelchair),

25   [1]      Similarly, to state a claim under Section 504 of the Rehabilitation Act, a plaintiff must
26   allege that "(1) he is an individual with a disability; (2) he is otherwise qualified to receive the
     benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4)
27   the program receives federal financial assistance."  Duvall v. County of Kitsap, 260 F.3d 1124,
     1135 (9th Cir. 2001) (citation omitted).

28

1    through October (when plaintiff used the size 22 wheelchair), concluding in November (when

2    plaintiff was injured while using the allegedly malfunctioning size 20 wheelchair).  Because

3    plaintiff's legal claims lack an adequate description of his alleged exclusion from, or denial of,

4    benefits due to his disability, the court finds that the complaint fails to state a cognizable claim

5    under the ADA or RA.  Moreover, because plaintiff's state law claims are also premised on this

6    alleged discrimination -- California Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq., and the

7    California Disabled Persons Act, Cal. Civ. Code §§ 54 et seq. --  they too are inadequately alleged

8    and supported.

9         At least one court has found similar allegations to state an Eighth Amendment claim for

10   deliberate indifference to serious medical needs,[2] pursuant to 42 U.S.C. § 1983, but not a

11   disability discrimination claim.  In an unpublished decision, the Tenth Circuit Court of Appeals,

12   in Moore v. Prison Health Services, Inc., 201 F.3d 448 (10th Cir. 1999), affirmed the district

13   court's dismissal of plaintiff's claims under the ADA and RA, and affirmed the district court's

---

[2]     "[D]eliberate indifference to serious medical needs of prisoners constitutes the
unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true
whether the indifference is manifested by prison doctors in their response to the prisoner's needs
or by prison guards in intentionally denying or delaying access to medical care or intentionally
interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)
(internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately
indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere
with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting
Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

     To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must
demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health
or safety; the official must both be aware of the facts from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v.
Brennan, 511 U.S. 825, 837 (1994).

     "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the
plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's
condition could result in further significant injury or the unnecessary and wanton infliction of
pain.  Second, the plaintiff must show the defendant's response to the need was deliberately
indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to
respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."
Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation
marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v.
CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

1   grant of summary judgment to defendants on plaintiff's Eighth Amendment claim.  Plaintiff,

2   whose left leg was amputated above the knee, asserted a violation of his rights "when a

3   wheelchair provided for his use fell over or collapsed three days after it was issued to him."  Id. at

4   *1.  The Court of Appeals agreed with the district court's decision that "plaintiff's complaints of

5   inadequate treatment did not fall within the scope of the anti-discrimination provisions of the

6   ADA and Rehabilitation Act. . . . These statutes afford disabled persons legal rights regarding

7   access to programs and activities enjoyed by all, not a general federal cause of action for

8   challenging the medical treatment of their underlying disabilities."  Id.   See also Buchanan v.

9   Maine, 469 F.3d 158, 175-76 (1st Cir. 2006) ("By the time of the summary judgment motions,

10  plaintiff's claim came down to specifics that demonstrated that the claim was not about

11  discriminatory denial of services, but rather about the adequacy of treatment. . . . There is also no

12  evidence that [plaintiff] was either discriminated against or not provided the additional services

13  the plaintiff seeks 'by reason of' his disability."); Elbert v. New York State Dept. of Correctional

14  Services, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (*collecting cases*) ("Courts routinely dismiss

15  ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the

16  inmate was treated differently because of his or her disability.")

17       The court notes, however, that while the State Defendants are properly named under the

18  ADA, see 42 U.S.C. § 12131(1) (defining "public entity" as "any State . . . government," and

19  "any department [or] agency . . . of a State . . . government"); United States v. Georgia, 546 U.S.

20  151, 159 (2006) (Title II of ADA is a valid abrogation of state sovereign immunity); they are not

21  proper defendants in an action under Section 1983, see Will v. Michigan Dep't of State Police,

22  491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official

23  capacities are 'persons' under § 1983" and therefore cannot be sued under that statute).

24  Conversely, while individuals cannot be sued directly under the ADA, see Vinson v. Thomas, 288

25  F.3d 1145, 1156 (9th Cir. 2002), Section 1983 imposes liability only on "persons" who violate an

26  individual's federal rights while acting under color of state law.  Hence, while plaintiff's ADA

27  claim cannot proceed against defendant Mark Green, he may be a proper defendant in a Section

28  1983 action.

1    For these reasons, the court finds the allegations in plaintiff's complaint so vague and

2    conclusory that it is unable to determine whether the alleged facts can sustain a potentially

3    cognizable claim for relief.  The complaint does not contain a short and plain statement as

4    required by Fed. R. Civ. P. 8(a)(2).  A complaint must give fair notice and state the elements of

5    the claim plainly and succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.

6    1984).  Plaintiff must allege with particularity the overt acts which defendants engaged in that

7    support plaintiff's claims.  Id.  Because plaintiff has failed to comply with the requirements of

8    Fed. R. Civ. P. 8(a)(2), the complaint must be dismissed.  The court will, however, grant leave to

9    file an amended complaint.

10    Local Rule 220 requires that an amended complaint be complete in itself without

11    reference to any prior pleading.  An amended complaint supersedes the original complaint.  See

12    Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

13    In accordance with the above, IT IS HEREBY ORDERED that:

14    1.  Plaintiff's complaint is dismissed.

15    2.  Within thirty days from the date of this order, plaintiff shall complete the attached

16    Notice of Amendment and submit the following documents to the court:

17    a.  The completed Notice of Amendment; and

18    b.  An original and one copy of the Amended Complaint.

19    Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the

20    Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must

21    also bear the docket number assigned to this case and must be labeled "Amended Complaint."

22    3.  Failure to file an amended complaint in accordance with this order may result in the

23    dismissal of this action.

24    Dated:  May 16, 2014

25

26    /bark1793.14.new.kjn

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

27

28

7

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

11

FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14 WILLIAM BARKER,                                No.  2:13-cv-01793-KJN P

15            Plaintiff,

16      v.                                       NOTICE OF AMENDMENT

17 CALIFORNIA DEPARTMENT OF
   CORRECTIONS AND
18 REHABILITATION, et al.,

19            Defendants.

20

21      Plaintiff hereby submits the following document in compliance with the court's order

22 filed_____.

23

24      _____          Amended Complaint

25

26

27 _____    _____
   Date                                        Plaintiff

28

8