UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARKER, | No. 2:13-cv-1793 KJN P |
| Plaintiff, | |
| v. | ORDER & |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a state prisoner, who is represented by counsel in this action. Plaintiff proceeds on his First Amended Complaint, in which he raises claims arising under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California state law.

Presently before the court is defendants' motion to dismiss. For the reasons set forth below, the undersigned recommends that the motion to dismiss be granted in part, and that plaintiff be denied leave to file a Second Amended Complaint.

I. Background

  A. Procedural History

This case proceeds on plaintiff's First Amended Complaint ("FAC," ECF No. 9), against defendants State of California, the California Department of Corrections and Rehabilitation

1

("CDCR"), and Mark Green.  The FAC includes claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, and state law claims under the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. ("Unruh Act"), and the California Disabled Persons Act, Cal. Civ. Code §§ 54.1 et seq. ("CDPA") (all alleged against defendants CDCR and the State of California), and an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 (alleged against defendant Green).

On September 11, 2014, the court, after screening the FAC pursuant to 28 U.S.C. § 1915A, issued an order directing service on defendants State of California, CDCR, and Green. (ECF No. 14.)

Now pending before the court is defendants' motion to dismiss plaintiff's complaint on the following grounds:

- Defendants move to dismiss plaintiff's ADA and Rehabilitation Act claims against CDCR and the State of California for failure to state a claim.
- Defendants move to dismiss plaintiff's state law claims against CDCR and the State of California as barred by Eleventh Amendment immunity
- Defendants move to dismiss plaintiff's Section 1983 claim against defendant Green in his official capacity as barred by Eleventh Amendment immunity.

(Motion, ECF No. 19.)

B.  Factual Allegations

In the operative First Amended Complaint, plaintiff alleges as follows.

At all pertinent times, plaintiff was an inmate at California Medical Facility ("CMF") in Vacaville, California.  (FAC, ECF No. 9-1 at 2.)

Plaintiff is confined to a wheelchair, and has been designated "DPW" under the remedial plan ordered by the court in Armstrong v. Brown, No. C 94–2307 CW (N.D. Cal.).  As a result of this designation, plaintiff is prescribed a wheelchair at all times, and requires wheelchair-accessible housing and paths of travel.  (Id. at 2.)

Defendant Mark Green is a Material and Stores Supervisor I at CMF, who is allegedly responsible for issuing wheelchairs to CMF inmates.  (Id. at 2.)

2

1    On May 23, 2012, plaintiff purchased a new wheelchair ("Initial Wheelchair") from CMF.
2    The Initial Wheelchair was equipped with a regular frame and a 20-inch wide seat. (Id. at 3.)
3    In the course of testing the Initial Wheelchair, plaintiff found that it responded as if it had
4    a bent axle. According to plaintiff, he therefore made several informal requests for a heavy-duty
5    wheelchair, as he suspected that he weighed too much to safely use a regular wheelchair. (Id. at
6    3, 4.) Plaintiff describes a heavy-duty wheelchair as having "a higher weight capacity than a
7    regular wheelchair." He adds that the "rear wheels [of a heavy-duty wheelchair] have a dual axel
8    whereas a regular wheelchair has a single axel." (Id. at 3.)
9    On June 18, 2012, plaintiff made a formal request for a heavy-duty wheelchair. Plaintiff
10   alleges that, in support of his request, he indicated that his weight exceeded the weight capacity of
11   the Initial Wheelchair, that the wheels of the Initial Wheelchair did not roll properly, that portions
12   of the Initial Wheelchair had become torn after less than one month of use, and that the Initial
13   Wheelchair's right rear wheel rolled as though its axel was bent. (Id.)
14   On October 12, 2012, nearly four months later, defendant Green issued plaintiff a
15   replacement wheelchair with a 22-inch-wide seat ("Replacement Wheelchair"). Plaintiff alleges
16   that he immediately told Green that the Replacement Wheelchair was too large and that he
17   (plaintiff) required a wheelchair with a seat that was only 20 inches wide. Plaintiff alleges on
18   information and belief that Green knew that a wheelchair with a 22-inch wide seat, unlike a
19   wheelchair with a 20-inch wide seat, would be too wide to pass through all doorways at CMF.
20   Plaintiff also alleges on information and belief that defendant Green knew that plaintiff is
21   designated DPW and therefore requires a wheelchair that can pass through all doorways at CMF.
22   (Id. at 4.)
23   According to plaintiff, as a result of being issued the Replacement Wheelchair, i.e., a
24   wheelchair that was too large to pass through all doorways at CMF, he was unable to access the
25   B-1 eye clinic, as well as religious services. (Id. at 4-5.)
26   On October 25, 2012, plaintiff filed a Reasonable Modification or Accommodation
27   Request Form, requesting a wheelchair with a 20-inch seat. On November 5, 2012, defendant
28   Green responded by again providing plaintiff with the Initial Wheelchair. Plaintiff alleges that,

3

despite pointing out to Green that he was being provided with the same wheelchair he had previously received, he was not given a different wheelchair. (Id. at 5.)

According to plaintiff, on November 19, 2012, the Initial Wheelchair "failed" by veering abruptly to the left and almost rolling over. Plaintiff alleges that his hand became lodged in the wheel, causing him to sustain injuries which included, but were not limited to, "a bony avulsion of the ulnar collateral ligament of the left thumb and comminuted fracture of the proximal phalanx of the left thumb with volar displacement of the proximal phalanx . . . ." Plaintiff consequently required surgery under general anesthesia at San Joaquin General Hospital to repair the damage. (Id. at 5.)

Plaintiff seeks monetary damages, declaratory relief, attorney's fees, and costs. (Id. at 10.)

III. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes

---

[1] Hereinafter, the term "Rule" refers to the applicable Federal Rule of Civil Procedure.

4

of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

IV. Analysis

    A. Has plaintiff stated a claim against the State of California or CDCR under Title II of the ADA and/or under the Rehabilitation Act?

Defendants move to dismiss plaintiff's claims against CDCR and the State of California under Title II of the ADA and Section 504 of the Rehabilitation Act. Defendants argue: "Plaintiff does not allege any facts in his complaint against the State or CDCR, and Plaintiff has alleged no nexus between his allegations against Green and his conclusory allegation that the State and CDCR discriminated against him solely based on his disability." (Motion, ECF No. 19 at 5.)

Plaintiff counters that "the court already said the Amended Complaint states a potentially cognizable claim for relief against the Defendants pursuant to the ADA, [the Rehabilitation Act], and parallel state laws."[2] (Opposition, ECF No. 20 at 4.)

Plaintiff misconstrues the nature of the preliminary screening called for by 28 U.S.C. § 1915A. A court's determination, upon screening, that a complaint may state cognizable claims does not preclude a defendant from subsequently bringing a motion to dismiss one or more of

---

[2] Plaintiff unhelpfully justifies his opposition by adding, "This isn't some frivolous lawsuit filed by a drugged out meth head with nothing better to do in Administrative Segregation than file lawsuits all day. This Amended Complaint was drafted by a lawyer with fourteen years of experience, who has filed thousands of lawsuits, and knows what he's doing." (ECF No. 20 at 4.) For reasons that do not bear mention, the undersigned does not rely on this argument herein.

those claims under Federal Rule of Civil Procedure 12(b)(6). See Norsworthy v. Beard, __ F.3d __, 2015 WL 1478264 at *3 n. 4 (N.D. Cal. Mar. 31, 2015) ("The issuance of a screening order under the Prison Litigation Reform Act finding that [plaintiff] has stated a cognizable claim does not foreclose Defendants from moving to dismiss the complaint."); Teahan v. Wilhelm, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007) ("[T]he sua sponte screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring."); James v. Perez, No. No. 2:08–CV–01857–RRC, 2012 WL 5387676 (E.D. Cal. Nov. 1, 2012) ("To adopt [plaintiff]'s position [and hold that screening under 28 U.S.C. § 1915A precludes defendants from subsequently filing a Rule 12(b)(6) motion] would deprive [d]efendants of the basic procedural right to challenge the sufficiency of the pleadings."). It is for this reason that the undersigned noted, in the earlier screening order, that the FAC "states a *potentially* cognizable claim for relief against defendants CDCR and the State of California pursuant to the ADA, [Rehabilitation Act], and the alleged state law claims, and against defendant Green pursuant to 42 U.S.C. § 1983 for the alleged Eighth Amendment violation." (ECF No. 14 at 1-2) (emphasis added). Plaintiff cannot rely solely on the court's screening as a basis for overcoming a Rule 12(b)(6) motion.

Title II of the ADA prohibits discrimination on the basis of disability, as follows: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo Cnty., 609 F.3d 1011, 1021 (9th Cir. 2010).

"Title II of the ADA was expressly modeled after [Section] 504 of the Rehabilitation Act." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001). In order to state a claim

under Section 504, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.

Id. In general, a complaint that properly states a claim under Title II of the ADA also states a claim under Section 504. See Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) ("[C]ourts have applied the same analysis to claims brought under both statutes"); Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997) ("Congress has directed that the ADA and [Rehabilitation Act] be construed consistently.").

Plaintiff has satisfactorily pled claims under the Rehabilitation Act and Title II of the ADA against CDCR and the State of California. The Ninth Circuit has held that a prison inmate may state claims under both the Rehabilitation Act and the ADA based on allegations "that [the inmate] was improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997) (citing Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996)). The Ninth Circuit has also held that "[w]hen a plaintiff brings a direct suit under either [the Rehabilitation Act] or Title II of the ADA against a municipality . . . the public entity is liable for the vicarious acts of its employees." Duvall, 260 F.3d at 1141. Subsequent courts have extended this holding to other types of public entities, including CDCR. See, e.g., Orr v. Cal. Highway Patrol, No. No. 2:14–585 WBS EFB, 2015 WL 848553 at *16 (E.D. Cal. Feb. 26, 2015) ("Public entities are vicariously liable for the acts of their employees under both acts."); Bohnert v. Mitchell, No. CV–08–2303–PHX–LOA, 2010 WL 4269569 at *6 (D. Ariz. Oct. 26, 2010) ("The State Defendants acknowledge that the Ninth Circuit has ruled that public entities can be held vicariously liable if their employees discriminate against disabled persons.") (internal quotation omitted); Brown v. CDC, No. 1:04-cv-5215-LJO-DLB, 2008 WL 681840 at *4 (E.D. Cal. Mar. 11, 2008) ("[T]heir employer, California Department of Corrections and Rehabilitation, is also a defendant and is liable under Title II as a public entity for the discriminatory acts of its employees.").

Defendants have provided no rationale for the court to deviate from these holdings and to find that CDCR – and by extension, the State of California, of which CDCR is an agency – cannot be held vicariously liable for the acts of defendant Green, who, according to the FAC, is a CMF employee.  (ECF No. 9-1 at 2.)  Plaintiff has alleged that he requires a wheelchair at all times, and that he was excluded from an eye clinic and religious services at CMF because the wheelchair Green issued him would not allow him access to the pertinent locations.  These allegations are sufficient to state a claim for vicarious liability under Title II of the ADA and Section 504 against the State of California and CDCR.  Defendants' argument that plaintiff has failed to specifically allege discriminatory intent on the part of the State of California and/or CDCR (Motion, ECF No. 19-1 at 7-8) is also unavailing due to vicarious liability.

Defendants next argue for dismissal because "[p]laintiff does not have the right to sue for the failure to provide him with a wheelchair that would allow him to access all of CMF's services under the ADA or [the Rehabilitation Act]."  (ECF No. 19-1 at 6.)  In support, defendants point to a regulation, promulgated by the United States Department of Justice ("DOJ") under the ADA and the Rehabilitation Act, which provides that "[t]his part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs" 28 CFR § 35.135 (2015).

Defendants' argument does not appear to be well-founded.  The DOJ has issued a technical assistance manual that provides guidance in complying with ADA regulations.  Per the Ninth Circuit, "The guidance provided in the technical assistance manual is an interpretation of the DOJ's regulation, and, as such, is entitled to significant weight as to the meaning of the regulation."  Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 875-76 (9th Cir. 2004) (internal citations omitted).  The manual provides, in a section addressing the regulation in question, that:

> A public entity is not required to provide individuals with disabilities with personal or individually prescribed devices, such as wheelchairs, prescription eyeglasses, or hearing aids, or to provide services of a personal nature, such as assistance in eating, toileting, or dressing.  **Of course, if personal services or devices are customarily provided to the individuals served by a public**

> **entity,** such as a hospital or nursing home**, then these personal services should also be provided to individuals with disabilities.**

Americans with Disabilities Act Title II Technical Assistance Manual, § II-3.6200, <u>available at</u> http://www.usdoj.gov/crt/ada/taman2.html (emphasis added).  The situation presented in California prisons is analogous to the highlighted provision.  CDCR and the State of California have undertaken the provision of wheelchairs to disabled inmates:  the court-ordered remedial plan in <u>Armstrong</u> requires CDCR, among other things, "to ensure that prisoners and parolees with disabilities . . . . are able to obtain and keep necessary assistive devices," <u>Armstrong v. Brown</u>, 857 F. Supp. 2d 919, 925 (N.D. Cal. 2012), including wheelchairs.  As defendants CDCR and the State of California have undertaken the provision of wheelchairs, it would appear that the regulation cited by defendants cannot insulate defendants CDCR and State of California from liability in the instant lawsuit.

    Defendants next argue that plaintiff "has not alleged facts that would demonstrate the State and CDCR discriminated against him solely on the basis of his disability . . . but, at most, that the treatment he received for his disability – the wheelchair – was inadequate. . . .  [T]his does not give rise to an ADA or [Section 504] claim."  (ECF No. 19-1 at 6.)  Defendants misconstrue the substance of plaintiff's claim, which is that defendants failed to make services, programs, and activities at CMF accessible to him by issuing him improper wheelchairs.  Both the Rehabilitation Act and Title II of the ADA prohibit CDCR and the State of California from denying inmates the benefits of services, programs, and activities solely by reason of their disabilities.  See <u>Penn. Dep't of Corr.</u>, 524 U.S. 206 (1998) (holding that 42 U.S.C. § 12132 applies to state prisons); <u>Armstrong v. Wilson</u>, 124 F. 3d 1019 (9th Cir. 1997) (holding that both 42 U.S.C § 12132 and the Rehabilitation Act apply to state prisons), <u>cert. denied</u>, <u>Wilson v. Armstrong</u>, 524 U.S. 937 (1998).  Given that plaintiff has a qualifying disability, he must be provided access to the services, programs, and activities available to non-disabled inmates at CMF; the wheelchair is merely an instrumentality for provision of access, and such, the fact that plaintiff was given a wheelchair is not dispositive of liability.  Consequently, defendants' citation

1    to Simmons, 609 F.3d at 1011, is inapt. That case concerns a minor who suffered from
2    depression and committed suicide while in jail. The decedent's parents sued jail authorities for,
3    among other things, violating the ADA by allegedly depriving the decedent of programs or
4    activities to treat his depression. The Ninth Circuit disagreed, holding that "[t]he ADA prohibits
5    discrimination because of disability, not inadequate treatment for disability." Id. at 1022. The
6    latter sentence is quoted, and relied upon, by defendants in their moving papers. The distinction
7    with the instant case is evident. Plaintiff herein sues because he has been deprived of access to
8    existing services, programs, and activities at CMF, not because defendants have failed to take
9    affirmative steps to treat his disability. Again, the wheelchair in question is not a treatment, but
10   per the Armstrong court, an "assistive device," 857 F. Supp. 2d at 925, i.e., a means to facilitate
11   plaintiff's participation in prison life on a nondiscriminatory basis. Defendants' motion to
12   dismiss on this ground must therefore be denied.
13          Finally, defendants argue that plaintiff's ADA and Rehabilitation Act claims ought to be
14   dismissed because plaintiff has failed to allege systemic discrimination against disabled inmates
15   on the part of CDCR and/or the State of California. This argument ignores the numerous
16   individual claims brought by prisoners under the ADA and/or the Rehabilitation Act that have
17   survived dismissal motions. See, e.g., Yeskey, 524 U.S. at 206 (reversing Rule 12(b)(6) dismissal
18   on the grounds that the plaintiff could state a claim under ADA for being excluded from program
19   run by state prison); Becker v. Oregon, 170 F. Supp. 2d 1061 (D. Or. 2001) (denying motion to
20   dismiss under Rule 12(b)(6) on the grounds that plaintiff, a below-the-knee amputee, could state a
21   claim under the ADA and the Rehabilitation Act for prison's failure to provide accessible
22   showers). Defendants' citation to Johnson ex rel. Johnson v. Thompson, 971 F.2d 1487 (10th
23   Cir. 1992), is unpersuasive. The sentence from that opinion which defendants quote – "If others
24   with the same handicap do not suffer the discrimination, then the discrimination does not result
25   solely by reason of the handicap," id. at 1493 (internal quotation omitted) – addresses the Johnson
26   plaintiffs' contention that their children were discriminated against both because of their
27   disabilities *and* their low socioeconomic status. The Tenth Circuit disagreed and dismissed the
28   plaintiffs' claims under Section 504, finding that "[t]he word *solely* provides the key: the

discrimination must result from the handicap and from the handicap alone." Id. (emphasis in original).  In the instant case, plaintiff alleges ADA and Section 504 violations solely because of his disability; as plaintiff does not simultaneously allege another basis for discrimination beyond disability, Johnson's holding is irrelevant to this case.

Accordingly, for the reasons set forth above, defendants' motion to dismiss plaintiff's claims against CDCR and the State of California under the ADA and the Rehabilitation Act should be denied.

      B.  <u>Are the State of California and CDCR entitled to sovereign immunity as to plaintiff's state law claims?</u>

Defendants move to dismiss plaintiff's claims under the Unruh Act and the CDPA, contending that they are barred on grounds of sovereign immunity under the Eleventh Amendment.

 Plaintiff counters that, (i) because Congress explicitly abrogated state sovereign immunity in enacting the ADA, and (ii) because the California legislature explicitly incorporated the ADA into the Unruh Act, Cal. Civ. Code § 51(f), and the CDPA, Cal. Civ. Code § 54.1(d),[3] therefore (iii) California consented to waive sovereign immunity for claims under these statutes to the extent that such claims are based on alleged ADA violations.  (Opposition, ECF No. 20 at 10.)

The courts that have considered plaintiff's argument have rejected it.  See, e.g., Hutchinson v. Cal. Dep't Corr. and Rehab., No. 2:13-cv-00620-MCE-AC, 2013 WL 5569984 at *3 (E.D. Cal. Oct. 9, 2013) ("Any consent to suit must be 'unequivocal,' and Plaintiff does not explain how mandating that the baseline substantive standards under the Unruh Act and the CDPA comport with the ADA unequivocally demonstrates that the State of California intended to subject itself to all suits brought under those provisions."); Myers v. Cal. Dep't of Rehab., No. 2:12–cv–00497–GEB–GGH, 2012 WL 3529784 at *3 (E.D. Cal. Aug. 14, 2012) ("[Plaintiff] fails to demonstrate that California made a 'clear declaration' in the Unruh Act [or CDPA] of an

---

[3] Plaintiff argues that the adoption-by-incorporation of the ADA into these statutes ensured that California laws regarding disabled persons' civil rights would not be preempted by the ADA. (Opposition, ECF No. 20 at 7-10.)

11

intent to waive its sovereign immunity concerning any of these statutes.  Therefore, this portion of [defendant]'s dismissal motion is GRANTED."); McColm v. Marin Cnty., No. 01-cv-1108-SI, 2002 WL 243627 (N.D. Cal. Feb 14, 2002) (invoking Eleventh Amendment immunity as basis for dismissing disabled plaintiff's Unruh Act claim).  See also Munson v. California, No. 2:09-cv-0478-JAM-EFB, 2011 WL 284591 at *3 (E.D. Cal. Jan. 25, 2011) (holding that Cal. Gov't Code § 844.6, which provides that public entities are not liable for injury to a prisoner, required dismissal of plaintiff's claim under the California Disabled Persons Act.)

Plaintiff has failed to provide the court with a convincing rationale for deviating from these precedents.  Accordingly, the undersigned recommends that plaintiff's state law claims against the State of California and CDCR be dismissed with prejudice based on Eleventh Amendment immunity.

As it appears that defendants State of California and CDCR are entitled to immunity from plaintiff's state law claims, the court need not reach defendants' argument that plaintiff failed to properly state a claim under these statutes.  (See Motion, ECF No. 19-1 at 10.)

### C. Can defendant Green be sued in his official capacity under Section 1983?

Defendants move to dismiss plaintiff's Section 1983 claim against defendant Green to the extent that it is alleged against Green in his official capacity.  Defendant argues that such a claim is barred by Eleventh Amendment immunity.

Plaintiff concedes that defendant Green cannot be sued in official capacity under Section 1983.

Accordingly, to the extent that it is alleged against defendant Green in his official capacity, the undersigned recommends that plaintiff's Section 1983 claim be dismissed with prejudice.

### D. Leave to Amend

Plaintiff's counsel has requested leave to file an amended complaint.  (ECF No. 20 at 5.) The Ninth Circuit has made clear that "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, 316 F.3d at 1052 (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)).

Here, plaintiff faces dismissal of his claims under the Unruh Act and the CDPA against defendants CDCR and the State of California, and his claim under Section 1983 against individual defendant Green in Green's official capacity. As dismissal of these claims is warranted as a matter of law based on Eleventh Amendment immunity, it appears that they cannot be saved by amendment. Accordingly, the undersigned recommends that plaintiff be denied leave to file an amended complaint.

V. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that the Clerk of the Court shall appoint a district judge in this action.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claims under California Unruh Civil Rights Act, Cal. Civ. Code §§ 51 et seq. and the California Disabled Persons Act, Cal. Civ. Code §§ 54.1 et seq., be dismissed with prejudice.

2. Plaintiff's claim under 42 U.S.C. § 1983 against defendant Mark Green in his official capacity be dismissed with prejudice.

3. Defendants' motion to dismiss (ECF No. 19) otherwise be denied.

4. Defendants be directed to file an answer to the remaining claims within twenty days of adoption of the these Findings and Recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 25, 2015

/bark1793.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

13